James D. FRENCH, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-13309.

Court of Criminal Appeals of Oklahoma.

Dec. 19, 1962.

As Corrected Jan. 4, 1963.

Leon G. Belote, McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Richard Penix, Pittsburg County Atty., for defendant in error.

NIX, Presiding Judge.

James D. French, who hereinafter will be referred to as the defendant, was charged in the District Court of Pittsburg County with the crime of Murder. He was tried before a jury who found the defendant guilty and fixed his punishment at death. He lodged his appeal in this Court within the time prescribed by law, asserting numerous assignments of error. We will deal with only one which we deem sufficient to justify reversal.

Defendant's paramount contention arose out of the defendant being brought before the jurors while handcuffed and his arms shackled to a six inch leather belt around his body, escorted by three armed guards. This, to which the defense counsel objected, happened on two different occasions. The first time being on the day of trial before the trial had begun, but in the presence of the jury panel. The second time being on the second day of trial while several of the jurors empaneled to try· said cause was seated in the jury box. Defendant was in such manner, seated in a chair at the counsel table and while one guard stood watch, the other two removed the cuffs and the belt around his body, to which the cuffs were ·shackled. All in the presence of at least a portion of the jury that had been chosen to determine defendant's fate.

Though defense counsel offered vigorous objection to· this procedure, the trial court overruled the objection and gave, as his reason on the first occasion, that the trial had not begun; and for the second occurrence, that it was prior to the convening of court.

The question for the court to determine is whether this procedure constitutes a violation of Title 22 O.S.A. § 15, which reads:

"No person can be compelled in a criminal action to be a witness against himself; nor can a person charged with a public offense be subjected before conviction to any more restraint than is necessary for his detention to answer the charge, and in no event shall he be tried before a jury while in chains or shackles."

We are of the opinion that the Statute was designed to prohibit an occurrence as is depicted in the case at bar. The history of the Statute strongly indicates that its origin was to preserve two inherent rights that all men who come before the bar of justice, as a matter right, are entitled to.

First, one charged with a crime is entitled to appear in court with free use of his faculties, both mentally and physically. The Common Law rule is to the effect that a prisoner brought into the presence of the court for trial upon a plea of not guilty, was entitled to appear "Free of all manner ,of shackles and bonds, unless there be evident danger of escape, and then he may be secured by irons". Blackstone 4th Com. 332.

In the case of State v. Williams, 18 Wash. 47, 50 P. 580–581, 39 L.R.A. 821, 63 Am.St.Rep. 869–871, it was said:

> It was the ancient rule at common law that a prisoner brought before a jury with his hands chained in iron, and refuses, on his application or that of his counsel to order their removal, the jury must necessarily conceive a prejudice against the accused as being in the opinion of the Judge, a dangerous man, and one not to be trusted, even under the surveillance of officers. Besides, the condition of the prisoner in shackles may, to some extent, deprive him of the free and calm use of all his faculties. Section 22, Art. 1, of our Constitution declares that: In criminal prosecution, the accused shall have the right to appear and defend in person. The right here declared is to appear with the use of not only his mental but his physical faculties unfettered and unless some impelling necessity demands the restraint of a prisoner, to secure the safety of others, and his own custody, the binding of the prisoner in irons is a plain violation of the constitutional guaranty.

A more elaborate discussion of the rule appears in Blair v. Commonwealth, 171 Ky. 319, 188 S.W. 390:

> "At early common law when a prisoner was brought into the court for trial, upon his plea of not guilty to an indictment for a criminal offense, he was entitled to make his appearance free from all shackles or bonds. This is his right to-day in the United States."

The other inherent right intended to be preserved by the Statute was the presumption of innocence that every defendant is cloaked with, until proven guilty. Am.Jur. Vol. 14, page 855:

> "The spirit of the law is that a prisoner, upon his trial before a jury, shall have the unrestrained use of his limbs and shall not suffer any physical bonds or burdens which might tend to confuse or embarrass his mental faculties. Furthermore, a prejudice might be created in the minds of the jury against a prisoner who should be brought before them handcuffed and shackled, which might interfere with a fair and just decision of the question of the guilt or innocence of such prisoner."

This appears to be the modern reasoning which motivated the present statute which has been heretofore cited, supra.

Until 1953, the Statute read: (Title 22 O.S.A. § 15–1951.)

> "The defendant is not to be subjected to any more restraint than is necessary for his arrest and detention."

This left the court with a broad discretion to determine what was necessary, but in 1953, the Statute was amended by the addition of the following language:

> " * * * and in no event shall he be tried before a jury while in chains and shackles."

This removed any and all discretion that the trial court had. It was predicated upon the theory that a man brought before the court in chains and shackles was prejudiced in the minds of the jury. They would ultimately draw the conclusion that defendant was a dangerous criminal who had to be chained and shackled to prevent his escape or prohibit him from doing harm to others or any act of violence.

Even in absence of a statute and where the court had discretion, the Fla. Court said: (Shultz v. State, 131 Fla. 757, 179 So. 764–765)

> "Every person is presumed to be innocent of the commission of crime and that presumption follows them through every stage of the trial until they shall have been convicted. It is, therefore, highly improper to bring a person who has not been convicted of crime, clothed as a convict and bound in chains, into the presence of a venire or jury by whom he is tried for any criminal offense and, when such condition is shown by the record to have obtained,

in many cases it might be sufficient grounds for a reversal."

Bear in mind this ruling was made without a statute that, "In no event can a defendant be tried before a jury in chains and shackles". Our Statute permits no discretion nor ramifications. It simply says it shall not be done.

Significance can be attached to the above decision as it presents the irrevocable damage that is done to defendant to bring him in such condition before a *venire or jury*.

In the case of Blair v. Commonwealth, supra, the court said (188 S.W. page 393):

"We, however, regard it our duty to say that the manacling of a person when upon trial for a criminal offense, whether bringing him into court, *while in the presence of the court or jury or at any stage of the trial*, under such circumstances as appear to have attended the handcuffing of appellant, cannot be too strongly condemned."

We share this expression of the Kentucky Court. Though biologically speaking, man may be an animal, it was never intended that he be treated as such in the realm of criminal jurisprudence. If we permitted the subjection of man to such treatment before the courts of our land, we have paved the way for him to be tried while tied to a log or in a steel cage, as well as chains and shackles. Barbarism has been abandoned and must never be permitted to creep back through the crevices created by lenient rules of law. Our Statute in no uncertain language, says *"It shall not be done"*, and we see no reason for relaxing the rule.

The Statute would apply in few cases, because seldom would a defendant other than those in prison be affected. The Court is thoroughly familiar with the responsibility of our officers and their duty to bring prisoners from their place of confinement to the court house for trial; and the precautions they must necessarily take to prevent their escape. But we must bear in mind a prisoner or convict is entitled to the same fair and impartial trial, and is to be cloaked with full benefit of the presumption of innocence to which all men are entitled.

Inside the portals of the court room, the trial judge is master. He should use every precaution within his grasp to see that the defendant is not paraded before the jury or jury panel in chains or shackles. Before trial, if defendant's presence is necessary, the jury panel could be called into the court room and defendant unshackled outside the court room before entry. During trial, the jury could assemble in their deliberation room while defendant is brought in so they would not have the opportunity to see him while chained and shackled.

Your writer is familiar with the court house where defendant was tried. He could have been brought through the clerk's office where a private room was available to remove the bonds. We do not mean that it is the duty of the trial judge to ride herd on the defendant to protect his rights from the prison to the court house, as we are primarily interested in the court room. And, we do not attempt to make this the only procedure, but only to emphasize that the utmost precaution should be exercised to prevent prejudice being inflicted upon the defendant during any stage of the trial. The trial judge, prior to trial, should counsel with the sheriff or warden in order to make the necessary arrangements for this to be carried out.

At the time of this writing, a number of letters are before this Court, written by the defendant, requesting the Court to affirm his case and permit the official to carry out the execution. This defendant has carved for himself a sordid and wretched life—filled with degradation and dispair.

If he is insane, he is to be pitied. If sane, he should not expect nor does he merit any commiseration from this Court, but to permit this execution under such circumstances would do irrevocable damage to our system of Jurisprudence. To deny him the right of a fair and impartial trial would pave the way for the unjust tampering with the inherent liberties of man.

For the above and foregoing reasons, this case is hereby reversed and remanded back to the trial court.

BUSSEY, Judge (concurring).

Judge BRETT joins me in stating that we are in complete accord with the excellent opinion of our colleague, Judge NIX, and we wish to add only a few observations.

The defendant in the instant case has urged that this Court dismiss his appeal and allow him to be executed in accordance with the judgment and sentence imposed against him.

This Court is charged with the solemn obligation of reviewing every case brought before it to determine if the defendant received that fair and impartial trial guaranteed by the Constitution and the Statutes of this State, and this duty is emphasized in a capital case. No person has the right to be executed at the hand of the State, nor, may he decree the punishment to be inflicted upon him for his criminal acts. Such matters are vested in the Sovereign power of the State—in its Legislative, Executive and Judicial Branches.

Under our system of jurisprudence there is but one standard by which our laws are interpreted and enforced. That standard is known as Due Process of Law. It guarantees a fair and impartial trial to the guilty and to the innocent alike. It is the unique symbol of freedom and democracy and when denied to any citizen, it results in a denial to all.

We have determined that the defendant did not receive that fair and impartial trial which the Constitution and the Statutes of this State require and are accordingly reversing and remanding this cause for a new trial.

When brought again before the trial judge, the defendant may waive his right to a jury trial and enter a plea of guilty, in which event, it will be the duty of the trial court to impose the judgment and sentence of the law; or, the defendant may be tried by a jury and leave to them the determination of his guilt or innocence and the punishment to be imposed therefor.

Justice requires no more, nor will be satisfied with less.