James McQUEEN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13945.

Court of Criminal Appeals of Oklahoma.

Nov. 2, 1966.

Rehearing Denied Dec. 28, 1966.

Valdhe F. Pitman, Oklahoma City, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Penn Lerblance, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

James McQueen, hereinafter referred to as defendant, was charged by information in the District Court of Oklahoma County with the crime of Robbery with Firearms.  He was tried by a jury, found

guilty, and sentenced to life imprisonment. From that judgment and sentence he has perfected his timely appeal to this Court alleging three assignments of error. We will herein discuss only one—that he was tried in "chains and shackles" in violation of the statute prohibiting same.

The incident of which defendant complains occurred during the voir dire examination of the jury panel. Before any proceedings were started, the trial judge and defense counsel tried to persuade defendant to change from his jail clothes to street clothes. He would not answer, nor would he change clothes. The selection of the jury began, and defendant jumped from his chair, unzipped his pants, and tried to remove his clothes. He was throwing things, and observers described him as "frothing at the mouth". He fell down on the floor, under the counsel table, and several Deputy Sheriffs had to subdue him, and placed handcuffs on him to quiet him. When he had calmed down, they placed him in his chair on the opposite side of the counsel table from the jury, with the handcuffs still on; two deputies in front of him, and two in back. The impanelment of the jury continued, and the trial judge instructed that a handkerchief be placed over the handcuffs. This was done, and the defendant sat through the remainder of the impanelment of the jury, quietly, but with the handcuffs covered as above and four deputy sheriffs surrounding him.

After the impanelment of the jury, the trial judge recessed until the following morning. The actual presentation of the case started the next morning, and defendant was calm, and remained quiet throughout the remainder of the trial, without restraint. It was brought out later in the trial, in the testimony of Dr. J. R. Huggins, jail physician, that he had been giving this defendant tranquilizers daily thru his imprisonment in the county jail; and that, when told of the seizure he had in the courtroom, he had prescribed a stronger drug to prevent any further re-occurrance.

Title 22 Okl.St.Ann. § 15, states:

"No person can be compelled in a criminal action to be a witness against himself; nor can a person charged with a public offense be subjected before conviction to any more restraint than is necessary for his detention to answer the charge, and, in no event, shall he be tried before a jury while in chains and shackles."

Before 1953, the statute read: The defendant is not to be subjected to any more restraint than is necessary for his arrest and detention.

■ This left the trial court with a broad discretion to determine what was necessary, but in 1953, the Statute was amended by the addition of the following language:

"* * * and, *in no event*, shall he be tried before a jury while in chains and shackles."

This removed any and all discretion that the trial court had.

■ This statute is to preserve the inherent right of a man charged with a crime to appear in court with free use of his faculties, both mental and physical, and to preserve his presumption of innocence.

This Court stated in French v. State, Okl. Cr., 377 P.2d 501:

"A defendant shall have the unrestrained use of his limbs and shall not suffer any physical bond or burden that may lead the jury to draw a foregone conclusion that defendant must be a dangerous and violent person and thus a prejudice created in the mind of the jury against defendant that would deny him a fair and impartial trial."

In the instant case, the trial court had before it the evidence that there was a medical history of blackouts, dizziness, etc., even though defendant had been committed to Central State Hospital for observation and was declared sane under the criminal laws existing today.

Whether this was a genuine epileptic seizure, or an act by defendant to gain a

mis-trial, this Court has no way of determining, other than the testimony of a physician who was present in the courtroom and described it as a Jacksonian type epileptic seizure. And, the further testimony of Dr. Huggins, that from the description of defendant's actions given him by this physician; he fully agreed to the type seizure and prescribed the drug for defendant to ward off further re-occurrance.

This question is not for us to determine at this time. The trial court should have satisfied the record *at the time* as to what actually occurred. The jury could have been excused, and a physician called to determine if, in fact, the defendant suffered an epileptic seizure. For if he did, was he then in a state to help his attorney with his defense, and continue the trial? The record reflects that defendant sat quietly, as in a daze, for the remainder of the impanelment of the jury; and sat quietly throughout the trial, after the administration of the drug.

The jury should not have been recalled until it was determined that defendant was, at that time, able to continue to trial without the need for handcuffs.

This Court is not attempting to say the defendant should not have been restrained when this incident occurred—only that the impanelment of the jury should not have continued with the defendant handcuffed.

The trial judge was meticulous in explaining into the record that he believed the defendant was not prejudiced by the handcuffs, in that the jury could not see them. However, there is nothing in the record to substantiate his view from any of the jurors. The trial judge had no control over this. The statute is explicit stating *"In no event"*. It does not say that it is permissible if the jury cannot see the handcuffs, or if they are covered with a handkerchief. It says *"in no event"*.

This Court will not make an exception to the statute. The manacling of a person when upon trial for a criminal offense, whether bringing him into court (as in the French case, supra), while in the presence of the court or jury, or at any stage of the trial, cannot be too strongly condemned.

█ We are, therefore, of the opinion that this was reversible error.

Further, there was highly prejudicial testimony by Dr. Huggins at pp. 123, 124, 125 and 126, wherein he states that the defendant definitely needs psychiatric treatment, and shouldn't be sent to a hospital where they will turn him loose in three months, but should be sent to McAlester, with an established psychiatric ward where he can be under prolonged observation. And, "Well, I felt like without question that in those moments in between these disturbances he has, he was capable of doing and would know what he was doing. I saw no reason, at that particular time, why the man shouldn't come on and stand trial. That is not saying, then, the same as now, that he did not need psychiatric treatment and medication. I went on to say that my personal opinion was he ought to be down at McAlester at the psychiatric ward. *Get him both ways.* In other words, he could stay there until he was released."

█ This was highly improper, and on a re-trial of this case, should be excluded.

This cause is hereby reversed and remanded in accordance with this decision for a new trial in the District Court of Oklahoma County, Oklahoma.

BUSSEY, P. J., and BRETT, J., concur.