Windsom PETERS, a/k/a Winsom Peters, a/k/a Bobby Joe Peters, a/k/a Winston Christopher Peters, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–233.

Court of Criminal Appeals of Oklahoma.

Nov. 21, 1973.

Don Anderson, Public Defender, Oklahoma County, for appellant.

Larry Derryberry, Atty. Gen., Kenneth L. Delashaw, Jr., Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Windsom Peters, a/k/a Winsom Peters, a/k/a Bobby Joe Peters, a/k/a Winston Christopher Peters, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court, Oklahoma County, Case No. CRF–72–2720, for the offense of Burglary in the Second Degree, After Former Conviction of a Felony; his punishment was fixed at a term of thirty-five (35) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Bobby H. Simonds testified that he was the Assistant Manager of the OTASCO Store located at 4th and Broadway in Oklahoma City, on November 10, 1972. On this date he locked the store during the evening hours at approximately 6:00 p. m. Shortly before 6:00 a. m. on November 11, 1972, he was summoned to the store by the Alarm Security Company. He went directly to the store and upon arriving at the store, he found the front door glass had been broken and the police were inside with the defendant in custody. Simonds further testified that approximately $21.65 in change had been removed from the cash register; that the guns on the rack in the store had been pulled down onto a shelf. He identified State's Exhibit 1 as being a key to a large riding mower. The witness added that the key, along with the change, had been retrieved from the defendant and that the only way that an individual could have gotten in the store was through the breakage in the front door.

Dave White testified that he was employed by the Oklahoma City Police Department on November 11, 1972. On that date, at approximately 5:40 a. m., he was called to the OTASCO Store located at 4th and Broadway. He and three other officers arrived at the scene at approximately the same time and they all observed the door glass was broken. Officer White further testified that one Officer Riggs observed someone in the tire shop area running toward the merchandise section and he and Officer Williams were so advised. He also observed a large concrete block, or rock, had been thrown through the door and that thereupon all officers entered through the breakage. Officer White also observed that the gun rack had been pulled down and upon checking one of the aisles in the store, he observed a person lying on the floor. He and Officer Riggs arrested this person and identified the individual as being the defendant. Officer White then proceeded to pat down the defendant for weapons and found a large amount of change in his pockets. He also found State's Exhibit 1, which was a key that had been taken from the OTASCO cash register. He further identified the change bag at the store as being State's Exhibit 2.

Officer Riggs and Officer Williams, both of the Oklahoma City Police Department, related substantially the same facts as did Officer White. Officer Riggs further related that he advised the defendant of his constitutional rights.

The defendant testified in his own behalf that on November 10, 1972, he had been in a bar on 6th and Harrison Street called the Fan Club. He stated that he left with a friend at approximately 5:00 a. m. on November 11, 1972, and was hungry so he went to Eddy's Cafe on Broadway to eat. After eating, he walked to 4th and Broadway, at which time two police officers pulled up across the street. The defendant went around the corner and the police picked him up and advised him that he had committed a burglary. Defendant said that he was taken to the store in question and one policeman offered him "half a block to run." The store manager then came and the defendant was put in jail. Defendant stated that the one-half block offer was to allow the officers to shoot him. The defendant admitted a previous felony conviction which was further established by a certified copy of the Judgment and Sentence and testimony of Officer Harvey.

Defendant cites three assignments of error, only two of which we deem meritorious enough to warrant discussion.

Defendant's first proposition asserts it was error to try him in jail clothing.

▮ The record reveals that defendant, at the beginning of the trial, was dressed in street clothing. After the first recess, the defendant was placed in the "dressout room." While in this room, the defendant tore his clothing off and placed one piece of the clothing in the urinal and the other in the commode. He was then dressed in another set of street clothing which he attempted to remove and tear. Thereafter, he was placed in jail overalls. Under these facts, it is our opinion that defendant waived any right to object to being tried in jail clothing. See French v. State, Okl.Cr., 416 P.2d 171.

Defendant's final proposition asserts that reversible error occurred when defendant was handcuffed before the jury.

The record reveals that during the impanelment of the jury, the defendant rose from his chair, approached the bench, and stated to the court: "I want to talk to you," but instead of approaching the bench, the defendant ran out of the back door of the courtroom. He was apprehended in the hallway and brought back into the courtroom handcuffed. The jury was excused and the court admonished the defendant that if he would assure the sheriff that there would be no other disturbances, he would remove the handcuffs. Thereafter, apparently the handcuffs were removed and the jury called back to their box.

Later, during the District Attorney's opening statements, the defendant screamed, shouted out, and jumped up and the deputy sheriff handcuffed the defendant a second time.

The trial court excused the jury a second time and admonished the defendant that if there were any further disruptions, he would be removed from the courtroom and the trial would proceed without him.

The trial court then asked the defendant if he would behave himself. The defendant's reply was a scream of "Alah" and other unintelligible yells. The deputy sheriff thereafter forcibly removed the defendant from the courtroom. The trial proceeded through the State's evidence without the defendant. The defendant was then brought back to the courtroom and allowed to remain during the remainder of the trial. Title 22 O.S.1971, § 15 states:

"No person can be compelled in a criminal action to be witness against himself; nor can a person charged with a public offense be subjected before conviction to any more restraint than is necessary for his detention to answer the charge, and in no event shall he be tried before a jury while in chains or shackles."

Title 22 O.S.1971, § 583 states:

"If the indictment or information is for a felony, the defendant must be personally present at the trial, but if for a misdemeanor not punishable by imprisonment, the trial may be had in the absence of the defendant; if, however, his presence is necessary for the purpose of identification, the court may, upon application of the county attorney, by an order or warrant, require the personal attendance of the defendant at the trial."

This Court has held in the past that under these two statutes, it is reversible error to try the defendant in absentia or while handcuffed. See McQueen v. State, Okl. Cr., 421 P.2d 284; Booze v. State, Okl.Cr., 390 P.2d 261, and French v. State, Okl.Cr., 377 P.2d 501. These cases, and others which hold the same, are hereby expressly overruled to the extent they conflict with this opinion.

▮ Two of the basic rights of the accused are to be cloaked with the presumption of innocence until proven guilty and the right to be present in the courtroom at every stage of his trial. However, it is our opinion that these two rights may be waived if defendant engages in misconduct

so disruptive and disrespectful that the trial cannot continue. See Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). To hold otherwise would result in an accused, such as the defendant in the instant case, never being tried and we do not believe the legislature in passing the above statute intended this end result.

It is our opinion, and we so hold, that when a trial judge is faced with a disruptive, disrespectful, and contemptuous defendant, such as in the instant case, he should first cite the defendant for contempt, to be disposed of at a later date, bind and gag him, thereby keeping the defendant present during the trial, or take the defendant out of the courtroom until he promises to conduct himself properly.

In the instant case we must commend Judge Carmon Harris for the manner in which he handled a most difficult proceeding. Judge Harris gave the defendant every opportunity to be present during his trial and to be present without handcuffs. He further made every effort to safeguard all the defendant's rights during the course of the trial. We therefore hold Judge Harris' measures were entirely appropriate under the circumstances.

Judgment and sentence affirmed.

BLISS, P. J., concurs.

BRETT, Judge (specially concurring):

I concur in this decision, but I believe the defendant should be removed from the courtroom to another nearby room, under the circumstances described herein, rather than binding and gagging him. It is defendant's constitutional right to be confronted by his accusers that is being waived by the accused person. Consequently, it appears to be more proper to place the accused in a nearby room than to bind and gag him in the presence of the jury. I feel compelled to state, however, that the nearby room must be sufficiently close for defense counsel to consult with him, as the need arises.