2006 OK CR 21

**George OCHOA, Petitioner**

v.

**STATE of Oklahoma, Respondent.**

**No. PCD 2002–1286.**

Court of Criminal Appeals of Oklahoma.

May 25, 2006.

---

Heidi Baier, Traci Rhone, Asst. Public Defenders, OK Co. Public Defender, Oklahoma City, OK, attorneys for petitioner at trial.

Pattye High, Asst. District Attorney, Oklahoma City, OK, attorney for the State at trial.

James L. Hankins, Hankins Law Office, Oklahoma City, OK, attorney for petitioner on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, William R. Holmes, Assistant Attorney General, Oklahoma City, OK, attorneys for State on appeal.

*OPINION DENYING SECOND APPLICATION FOR POST-CONVICTION RELIEF AFTER REMAND FOR JURY DETERMINATION ON ISSUE OF MENTAL RETARDATION*

C. JOHNSON, Judge.

¶ 1 Petitioner, George Ochoa, was convicted by a jury of two counts of First Degree Murder and one count of First Degree Burglary in Oklahoma County District Court, Case No. CF 1993-4302. He was sentenced to death for both murders and to twenty (20) years imprisonment for burglary. We affirmed these judgments and sentences on direct appeal.[1] This Court denied Ochoa's Original Application for Post-Conviction Relief,[2] and his federal habeas is pending in the Tenth Circuit.[3]

¶ 2 On December 2, 2002, Ochoa filed a Second Application for Post-Conviction Relief in a Death Penalty Case. We denied relief on Propositions Two and Three and granted Petitioner's request for an evidentiary hearing on Proposition One. *Ochoa v. State*, PCD 2002-1286 (Okl.Cr. December 17, 2002)(not for publication). An evidentiary hearing was held before the Honorable Susan Bragg on February 3, 2003, but the scope of that hearing was limited and further remand was required. *Ochoa v. State*, PCD 2002-1286 (Okl.Cr. March 27, 2003)(not for publication). A second evidentiary hearing on the issue of mental retardation was held, and following that hearing, we remanded this case to the District Court for a jury trial on mental retardation. *Ochoa v. State*, PCD 2002-1286 (Okl.Cr. April 15, 2004)(not for publication).

¶ 3 Jury trial on the issue of mental retardation was held on June 20th-21st, 2005, before the Honorable Virgil Black, District Judge. The jury returned a verdict that Mr. Ochoa is not mentally retarded. (O.R. 116; Tr. 327-328) The trial court filed Findings of Fact and Conclusions of Law in the District Court on July 20, 2005.[4] Petitioner's Supplemental Brief After Mental Retardation Jury Trial was filed on September 16, 2005. The State of Oklahoma filed its Supplemental Brief on September 23, 2005.

¶ 4 Though this appeal remains part of Mr. Ochoa's post-conviction case, we will review errors alleged to have occurred in this jury trial on mental retardation in the same manner as errors raised on direct appeal from a trial on the merits. *Myers v. State*, 2005 OK CR 22, ¶ 5, 130 P.3d 262, 265.

¶ 5 Prior to his jury trial on mental retardation, Ochoa asked the trial court to reverse the order of proof and shift the burden to the State to prove he was not mentally retarded beyond a reasonable doubt. The trial court denied the motion prior to *voir dire* and thereafter instructed the jury that Mr. Ochoa carried the burden of proving mental retardation by a preponderance of the evidence. In his first claim of error, Mr. Ochoa asks this Court "to revisit and overrule its prior decisions regarding the burdens of persuasion and proof in these types of cases and to hold that the State bears the burden of persuasion by the beyond a reasonable doubt standard that the Petitioner is not mentally retarded."

¶ 6 The Supreme Court, in *Atkins v. Virginia*, 536 U.S. 304, 317, 122 S.Ct. 2242, 2250, 153 L.Ed.2d 335 (2002), left to the individual States "the task of developing appropriate ways to enforce the constitutional restriction" against the execution of mentally retarded persons.[5] In response to *Atkins*, this Court

---

1. *Ochoa v. State*, 1998 OK CR 41, 963 P.2d 583, *cert. denied*, 526 U.S. 1023, 119 S.Ct. 1263, 143 L.Ed.2d 358 (1999).

2. *Ochoa v. State*, PCD 97-1559 (Okl.Cr. August 4, 1998)(not for publication).

3. *Ochoa v. Mullin*, No. 02-6032 (10th Cir.2002)

4. While the trial court's findings of facts and conclusions of law assist this Court in its decision, the jury is the finder of fact in this proceeding. *Myers v. State*, 2005 OK CR 22, ¶ 7, 130 P.3d 262, 267.

5. In *Atkins*, the Supreme Court stated "death is not a suitable punishment for a mentally retarded criminal.... Construing and applying the Eighth Amendment in the light of our 'evolving

has developed procedures to be followed when a post-conviction applicant, who has previously been sentenced to death, raises a claim that mental retardation bars his or her execution. *See Murphy v. State*, 2002 OK CR 32, 54 P.3d 556, *overruled in part in Blonner v. State*, 2006 OK CR 1, ¶ 5, 127 P.3d 1135, 1139; *Lambert v. State*, 2003 OK CR 11, ¶ 4, 71 P.3d 30, 31–32; *State ex.rel. Lane v. Bass*, 2004 OK CR 14, ¶ 8, 87 P.3d 629, 631–632.

¶ 7 In a post-conviction proceeding, when this Court has remanded the matter for a jury determination on the factual issue of mental retardation, a petitioner must prove mental retardation by a preponderance of the evidence. *Bass*, 2004 OK CR 14, ¶ 8, 87 P.3d at 631–632; *Lambert*, 2003 OK CR 11, ¶ 4, 71 P.3d at 31–32. To meet this burden, the petitioner must show he or she

functions at a significantly sub-average intellectual level that substantially limits his ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to understand the reactions of others; 2) that his mental retardation manifested itself before the age of 18; and 3) that he has significant limitations in adaptive functioning in at least two of the nine listed skill areas.

*Myers*, 2005 OK CR 22, ¶ 6, 130 P.3d at 266. The jury must consider the evidence presented by the State and by the petitioner and determine whether the petitioner has met this burden. If the jury finds the petitioner is not mentally retarded, the death sentence stands. *Myers, id.; Lambert*, 2003 OK CR 11, ¶ 5, 71 P.3d at 32.

¶ 8 This procedure has evolved somewhat since our first effort in *Murphy*, but a constant in the development of this area of the law in Oklahoma is that the burden of proof in a mental retardation jury trial shall be upon the petitioner/defendant to prove mental retardation by a preponderance of the evidence. *Murphy*, 2002 OK CR 32, ¶ 31, 54 P.3d at 568; *Blonner*, 2006 OK CR 1, ¶ 3, 127

P.3d at 1139; *Lambert*, 2003 OK CR 11, ¶ 4, 71 P.3d at 32; *Bass*, 2004 OK CR 14, ¶ 8, 87 P.3d at 631–632; *Myers*, 2005 OK CR 22, ¶ 6, 130 P.3d at 265.

¶ 9 Contrary to Ochoa's claim, we do not believe the principles underlying the Supreme Court's decision in *Atkins* require this Court to overrule our decisions dealing with the burden and standard of proof in mental retardation jury trials. To require the defendant/petitioner to show by a preponderance of the evidence his or her mental retardation to establish ineligibility for a sentence of death does not violate either of Oklahoma's constitutional provisions which ensure due process of law and protect against the infliction of cruel or unusual punishment. *See* Okla. Const. art.II, §§ 7, 9.

¶ 10 Further, we are not persuaded to restructure our procedure by the New Jersey Superior Court's holding in *State v. Jimenez*, 380 N.J.Super. 1, 880 A.2d 468 (Ct.App. Div.2005), which requires the State to establish the absence of mental retardation beyond a reasonable doubt. The holding in *Jimenez* that the burden should be on the State to prove a defendant's mental retardation is based upon that Court's interpretation of its own State Constitution and upon its public policy grounds. *Jimenez*, 880 A.2d at 489. Accordingly, Ochoa's first proposition of error is denied.

¶ 11 In Proposition Two, Ochoa argues that the Supreme Court's holding in *Atkins* prohibits the State from executing a person who was mentally retarded at the time the crimes were committed, not at the time of the jury trial on the issue of mental retardation. Evidence presented at Ochoa's jury trial on mental retardation showed that Ochoa scored higher on intelligence tests given in 2003 than on those given to him in 1995 and 1996. Evidence also was presented which showed Ochoa had learned to read and write while incarcerated and suggested his ability to learn to read and write likely contributed to his more current test performance.

standards of decency,' we therefore conclude that such punishment is excessive and that the Constitution 'places a substantive restriction on

the State's power to take the life' of a mentally retarded offender." *Atkins*, 536 U.S. at 321, 122 S.Ct at 2252 (internal citation omitted).

¶ 12 Counsel for Ochoa requested the trial court instruct the jury that it must find Ochoa was mentally retarded at the time of the offense and the trial court denied the requested instructions. Ochoa argues that the focus of the Court in *Atkins* was upon the moral culpability of the offender at the time of the crime and the relevant constitutional inquiry is not whether the offender is retarded at the moment, but rather whether the offender was retarded when the crime occurred. He asks this Court to vacate the jury's verdict because it was rendered upon instructions which required it to find Ochoa was presently mentally retarded.

¶ 13 Although the Court in *Atkins* did not specifically define "mental retardation" for the individual States and left it to the States "the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences," there it referenced two generally accepted clinical definitions. *Atkins*, 536 U.S. at 317, n. 22, 122 S.Ct. at 2250, n. 22. Both definitions require mental retardation to be present before the age of eighteen (18). *Atkins*, 536 U.S. at 308, n. 3, 318, 122 S.Ct. at 2245, n. 3, 2250 (AAMR definition requires mental retardation to "manifest" before age eighteen; American Psychiatric Association's definition states the "onset must occur before" eighteen (18)).

¶ 14 We disagree with Ochoa's description of mental retardation as a "fluid concept." While we do not dispute that a mentally retarded person can learn and develop skills, that ability is limited and the ability to learn and to adaptively function suggests the individual was likely not mentally retarded in the first place but fell into that borderline range or classification due to environmental or other factors which affected present ability. The witness at Ochoa's trial acknowledged this when she testified that some people functioning at a low level due to environment, education or impoverishment could move "above the level" of mental retardation classification by increasing his or her abilities to function. That Ochoa may have had an IQ score within the range of 70 to 75 at the time of the crime is relevant but does not prove mental retardation. "I.Q. tests alone are not determinative of the issue of mental retardation." *Myers*, 2005 OK CR 22, ¶ 8, 130 P.3d at 268.

¶ 15 The requisite cognitive and behavioral impairments attendant to mental retardation, as defined by this Court in evaluating Eighth Amendment claims, substantially limits one's ability to understand and process information, to communicate, to learn from experience or mistakes, to engage in logical reasoning, to control impulses, and to understand the reactions of others. We do not dispute the fact that a mentally retarded person can learn. However, a person who can learn beyond the accepted clinical definitions of mental retardation does not fall within the definition of those persons who may avoid execution due to mental retardation. The evidence presented at Ochoa's mental retardation jury trial showed he does not function at a significantly sub-average intellectual level that substantially limits his ability to understand and process information, to communicate, to learn from his mistakes, to engage in logical reasoning, to control impulses, and to understand the reaction of others. The jury was properly instructed it must find Ochoa "is" mentally retarded, as opposed to finding that he "was" mentally retarded at the time of the crime.

¶ 16 In his third claim of error, Ochoa contends the trial was fundamentally unfair because the jury learned of Ochoa's prior convictions and because the jury saw Ochoa wearing orange jail overalls and a "shock sleeve." The record reflects Ochoa chose not to dress out; and, following counsel's request that the trial court admonish him not to act inappropriately during the trial, Ochoa responded to the trial court's admonishments with obvious upset. After the trial court advised Ochoa he would be removed from the court room if he were to be disruptive, Ochoa responded that he was "being railroaded anyway, so it didn't matter to" him. At this point the trial court asked the deputy to put on "the sleeve," noting that "it may ensure that he won't behave inappropriately." After the deputy left with Ochoa, the trial court stated, "I've observed them with that on. They don't seem to be a problem." When Ochoa returned to the court room, counsel

said Ochoa wanted to make a record on "the sleeve." The trial court asked, "he objects to it?" Upon counsel's affirmative response, the trial court stated, "he was going to cause a problem, now he's not."

¶ 17 The potential jurors were called and the trial court informed the venire the case had "to do with a criminal matter that you will not hear about." The trial court explained a deputy was present because Ochoa was

in custody. So he's not free to leave ... So he's accompanied by a deputy all the time because he's in custody.

And he has been convicted of a crime that we're not going to tell you about at this point in time, okay? ... and there's very limited reasons why you might hear it during the trial, but probably not. But he's been convicted of a crime.

After a potential juror indicated his best friend graduated from the police academy, the trial court stated, "I don't see any law enforcement officers, but this is a criminal case, okay. Criminal cases are involved in this." After a potential juror described being robbed at gunpoint and said this was not that kind of case, the trial court stated, "And that's true, but it does have criminal overtones to it." After *voir dire*, before court recessed for the day, the trial court noted the breaks were a little bit longer, because "Ochoa's in custody and you're eight floors away from the coffee shop ..." During *voir dire*, the prosecutor also stated "You understand he's already been convicted of a crime," and reminded the jurors they were not going to find out what Ochoa was convicted of and might have "unanswered questions."

¶ 18 Ochoa contends the jury should not have received any information relating to his custodial status and he should not have been "forced" to proceed at trial in prisoner clothing and the shock sleeve. Ochoa relies upon *Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), and argues he was deprived of due process and a fundamentally fair trial when the jury observed him in obvious restraint without being told why he was in custody.

¶ 19 The jury's knowledge that Ochoa was in custody, that he had previously been convicted, and that the proceeding was related to a criminal matter was not violative of *Lambert v. State*, 2003 OK CR 11, 71 P.3d 30. While evidence relating to his criminal conviction and sentence of death are not relevant to the proceeding, the jury's knowledge that the proceeding was related to a criminal matter and that Ochoa was in custody and had been convicted of a crime does not create the prejudicial effect *Lambert* sought to avoid. Ochoa's counsel was not ineffective for not objecting to the trial court's and the prosecutor's remarks informing the jury that Ochoa had been convicted of a crime and/or that this was a criminal related matter.

¶ 20 It is error to compel an accused to appear before a jury in prison clothing where a timely request has been made for civilian clothing. *Rhinehart v. State*, 1980 OK CR 16, ¶ 8, 609 P.2d 781, 783. However here, the record shows Ochoa's decision to appear before the jury in jail dress was his own. He was compelled by no one but himself. We find no Fourteenth Amendment violation where Ochoa himself made the decision to appear in jail dress and no request for civilian clothing appears in the record. *Estelle v. Williams*, 425 U.S. 501, 512–513, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976).

¶ 21 Ochoa's presence before the jury in the shock sleeve is a more difficult matter. The record does not show Ochoa's counsel objected to the use of such restraint, however Ochoa himself repeatedly objected to its use. The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to a jury absent a trial court determination, in the exercise of its discretion, that the restraints are justified by a state interest specific to a particular trial. *Deck*, 544 U.S. at 629, 125 S.Ct. at 2012. The Supreme Court extended this legal principle beyond guilt/innocence proceedings and reversed a death sentence reached by a jury in a trial where a defendant was shackled with leg irons, handcuffs, and a belly chain during the penalty stage of trial. *Id.* at 2014. Noting the accuracy in decision-making is no less critical in the penalty stage of a capital pro-

ceeding, the Court stated the appearance of a defendant in shackles during the penalty phase

> implies to a jury, as a matter of common sense, that the court authorities consider him a danger to the community ... It also almost inevitably affects adversely the jury's perception of the character of the defendant. And it thereby inevitably undermines the jury's ability to weigh accurately all relevant considerations ... when it determines whether a defendant deserves death.

*Id.* (citations omitted).

¶ 22 Judicial hostility to shackling reflects its concerns towards three fundamental legal principles:

1. the criminal process presumes the defendant is innocent until proven guilty and visible shackling undermines the presumption of innocence and the related fairness of the factfinding process;

2. the Constitution provides the accused with a right to counsel to assist in his defense and the use of physical restraints diminishes that right by interfering with the accused's ability to communicate with his lawyer and assist in his defense; and

3. the routine use of shackles would undermine a dignified judicial process which demands the respectful treatment of the defendant.

*Id.* at 630–631, 125 S.Ct. at 2013. In *Deck,* the latter two considerations guided the Court's decision. *Id.* at 632, 125 S.Ct. at 2014.

¶ 23 While the use of shackles or other restraints is clearly not favored, the constitutional requirement against routine restraints is not absolute. *Id.* A judge, in the exercise of discretion and taking into account the special circumstances of each proceeding, including security concerns, may call for shackling. *Id.* at 633, 125 S.Ct. at 2014–2015. "But given their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case." *Id.* at 632, 125 S.Ct. at 2014.

¶ 24 In Oklahoma, Title 22, Section 15 provides

> No person can be compelled in a criminal action to be witness against himself; nor can a person charged with a public offense be subjected before conviction to any more restraint than is necessary for his detention to answer the charge, *and in no event shall he be tried before a jury while in chains or shackles.*

(emphasis added). This statutory right to be free from shackles may be waived by a defendant who engages in disruptive, contemptuous or disrespectful behavior. *Peters v. State,* 1973 OK CR 443, ¶ 14, 516 P.2d 1372, 1374–1375. In *Phillips v. State,* 1999 OK CR 38, ¶ 52, 989 P.2d 1017, 1033, where the appellant claimed he was denied due process and the right to a fair trial when he was forced to wear a stun belt during trial, we held Section 15 "applicable to physical restraints such as a stunbelt." *Id.* at ¶ 54, 989 P.2d at 1034. After noting Phillips had not waived his statutory right to be tried free of physical restraints, this Court referred to Phillips' prior outburst at another court proceeding and his violent behavior in county jails. *Id.* It noted "all parties agreed the stunbelt was not visible to the jury," no evidence showed Phillips' hands, arms or legs were physically restrained or that the stunbelt hampered his mental abilities. *Id.* at ¶ 55, 989 P.2d at 1034. Absent such evidence, this Court found the error did not deprive Phillips of a fair trial or have a "substantial influence" on the outcome of the trial. *Id.*

¶ 25 In *Davis v. State,* 1985 OK CR 140, 709 P.2d 207, when addressing a claim that the defendant was improperly tried in leg shackles in both stages of a capital murder trial, we held the procedure violated 22 O.S. § 15 and, in the absence of waiver, the trial court had no discretion in the matter, and the defendant should not be handcuffed or shackled during the trial. *Id.* at ¶ 3, 709 P.2d at 208. In *Davis,* the record did not establish any disruptive or disrespectful conduct on appellant's part justifying the use of restraints and there was not one "scintilla of evidence that the appellant planned to disrupt the trial." *Id.* at ¶ 4, 709 P.2d at 209.

The record showed the appellant was shackled at the direction of the county sheriff. *Id.* This Court reversed the capital murder conviction and sentence in *Davis.* *Id.* at ¶ 5, 709 P.2d at 209.

¶ 26 The State did not respond to this claim in its Supplemental Brief and we therefore directed Respondent to answer this claim of error. *See Ochoa v. State,* PCD 2002–1286 (Okl.Cr. January 31, 2006)(not for publication). The State filed its Response on February 10, 2006.

■■■ ¶ 27 Although Respondent admits Title 22, Section 15 is applicable to the use of a "shock sleeve," it argues the statute is inapplicable to this case because Ochoa was forced to wear the sleeve at a mental retardation jury trial *after* he had already been convicted. We do not agree. The application of Section 15 logically extends to any fact-finding trial processes. As the Supreme Court found in *Deck,* a jury's observation of a defendant in visible restraints undermines its ability to weigh accurately all relevant considerations. It implies the defendant is dangerous and almost assuredly affects the jury's perception of the defendant's character. Although a defendant's dangerousness has nothing to do with a finding of mental retardation, speculation on the defendant's character based upon observation of visible restraints diverts the jury's attention from its fact-finding mission—in this case, its consideration of the evidence relevant to the determination of a defendant's mental retardation.

¶ 28 The State argues that even if this Court finds the restrictions set forth in Section 15 to be applicable to jury determinations on mental retardation, no error occurred, because the trial court acted within its discretion when it ordered Ochoa to wear the shock sleeve. The State submits the record discloses Ochoa intended to disrupt the trial proceedings and "thus, to maintain order during the proceedings, the trial court properly had a "shock sleeve" placed on the Petitioner." (Br. of Appellee, pg. 7)

■■■ ¶ 29 The transcripts show the trial court and defense counsel were concerned with Ochoa's behavior. However, the record does not disclose why they were concerned nor does it reflect Ochoa actually engaged in any violent, disruptive, aggressive or inappropriate behavior prior to the trial court's order requiring him to wear the shock sleeve. At one point, following Ochoa's repeated objection to wearing the shock sleeve and after he asked "why are you putting it on my arm," the trial court responded "because you had told Ms. Rhone that you were going to be disruptive ..." No testimony was taken from Ms. Rhone and nothing else appears in the record to explain the trial court's concern.[6] At one point, the trial court told Ochoa the shock sleeve was "like insurance, precautionary."

¶ 30 We agree with the State that it is the trial judge's responsibility to control the decorum of the courtroom. *See Davis v. State,* 1985 OK CR 140, ¶¶ 1–2, 709 P.2d 207, 210 (Brett, J., specially concurring) However, this record does not sufficiently establish that Ochoa was in fact disruptive, violent or aggressive or that this level of control was needed. The trial court admitted its decision to put the shock sleeve on Ochoa was "like insurance" and was precautionary in nature. The trial court's statement that Ochoa told someone he was going to be disruptive was not sufficient to warrant the action taken by the trial court and its order requiring Ochoa to wear the shock sleeve constituted an abuse of discretion and violated 21 O.S.2001, § 15; *Davis,* 1985 OK CR 140, ¶ 4, 709 P.2d at 209; *see e.g. In re L.B.,* 1982 OK 47, 645 P.2d 498, 500 (isolated attempt to kick at judge after court interrupted defendant's attempt to promise the court he would behave was not sufficient to warrant hand-cuffing defendant during involuntary commitment proceeding); *U.S. v. Durham,* 287 F.3d 1297, 1303–1308 (11th Cir.2002)(use of stun belts generally and requirement of close judicial scrutiny).

¶ 31 The State argues the record does not show the shock sleeve was visible to the jury or that the jury knew what the shock sleeve was for, so even if the trial court should not

---

**6.** This scintilla of evidence may be more than what was before this Court in *Davis,* but it does not sufficiently disclose the reason for the trial court's concern.

have ordered Ochoa to wear it, no constitutional error resulted. In *Phillips*, where the parties agreed the stun belt was not visible to the jury and the defendant was not physically restrained and his mental abilities were not hampered, this Court found the defendant was not deprived of a fair trial and the violation of 22 O.S.2001, § 15 did not have a substantial influence on the outcome of trial. *Phillips*, 1999 OK CR 38, ¶ 55, 989 P.2d at 1033.

¶ 32 Here the record does not show the shock sleeve was visible to the jury. Even if it were visible, we doubt the jury's ability to see the shock sleeve was any more prejudicial to Ochoa than was the fact that the jury saw Ochoa wearing his jail clothing and Ochoa himself made the decision to dress out in jail clothing. Ochoa does not claim the shock sleeve prevented him from physically or mentally assisting his counsel at the mental retardation hearing. While this Court finds the trial court erred and abused its discretion by ordering Ochoa to wear the shock sleeve, Ochoa has not proven this error had a substantial influence on the outcome of the proceeding and has not shown prejudice. *See e.g., U.S. v. McKissick*, 204 F.3d 1282, 1299 (10th Cir.2000)(court will not presume prejudice where there was no evidence jurors noticed the stun belt).

¶ 33 In his last proposition of error, Ochoa contends the cumulative effect of the errors which occurred at his jury trial on mental retardation resulted in a fundamentally unfair proceeding. We do not agree. While the record does not support the trial court's decision requiring Ochoa to wear the shock sleeve and 22 O.S.2001, § 15 was violated, Ochoa has not shown he was prejudiced by that decision. As noted above, Ochoa himself chose to dress out in his jail clothing. As a result of that decision, the jurors knew he was in custody. Nothing in the record shows the shock sleeve was activated at any time during the trial and nothing in the record suggests it prevented Ochoa from participating and assisting his counsel.

¶ 34 Ochoa did not meet his burden of showing, by a preponderance of the evidence, that he is mentally retarded. He presented only one witness: a clinical psychologist who interviewed him, his family members, reviewed records and administered psychological tests. Although this witness testified Ochoa has significant deficiencies in communications and functional academics, she did not testify that he is mentally retarded. We are not persuaded by the witness's or Ochoa's suggestion that he might have been retarded at the time of his arrest, and apparently the jury was not persuaded by that suggestion either. His ability to learn and improve his intellectual functioning in prison suggests his adaptability and that his prior deficits were likely related to his poor social and economic environment which affected his development.

¶ 35 The single error identified in this appeal did not render Ochoa's trial fundamentally unfair or deprive him of due process. Where only one error is identified and it does not warrant relief, there can be no error by accumulation. *Hope v. State*, 1987 OK CR 24, ¶ 12, 732 P.2d 905, 908.

## DECISION

Ochoa's Second Application for Post–Conviction Relief in a Death Penalty Case is *DENIED* and his sentence of death is *AFFIRMED*. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

CHAPEL, P.J., A. JOHNSON and LEWIS, JJ.: concur.

LUMPKIN, V.P.J.: concurs in results.