**Don WATERDOWN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–86–307.**

Court of Criminal Appeals of Oklahoma.

Sept. 17, 1990.

Gloyd McCoy, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen. of Oklahoma, M. Caroline Emerson, Asst. Atty. Gen., Randy J. Malone, Legal Intern, Oklahoma City, for appellee.

## OPINION

LUMPKIN, Judge:

Appellant Don Waterdown was tried by a jury and convicted of Assault with a Dangerous Weapon (Auto), in violation of 21 O.S.1981, § 645, in case No. CRF–84–434, in the District Court of Muskogee County. The jury set punishment at nine (9) months in the county jail, and the trial court sentenced accordingly. From this judgment and sentence, Appellant appeals. We affirm.

The Appellant had been dating Sonja Sells, a resident of Muskogee, for more than two months when he appeared at her home around four o'clock in the morning on September 1, 1984. After failing to persuade her to attend a festival in Tahlequah with him, he subsequently left. When the time came for her to leave for work that morning she placed her two children in her Ford Pinto car and dropped them off at her sister's home. She arrived at work at approximately 7:30 a.m. and as she was attempting to pull into her parking space at Crowl Oil Company her car was hit several times in the rear and then on the driver's side by a vehicle driven by the Appellant. Officer William Joseph Pringle of the Muskogee Police Department was the investigating officer called to the scene immediately after the incident. Officer Pringle testified that photographs of the car admitted into evidence as State's Exhibits 1 and 2 accurately reflected the damages he observed to the Ford Pinto found in the parking lot of Crowl Oil Company at that time. Officer Pringle stated that his investigation revealed that another vehicle had rammed the Pinto with enough force to push the car partly across the parking lot sideways.

Appellant took the witness stand in his own defense and admitted that he was at Sells' home on the morning of September 1, 1984, that he came up behind her vehicle in the parking lot of Crowl Oil Company that same morning, but he could not recall the specifics of how his car hit her vehicle from the rear. He further testified that the front of his car also hit the side of Sells' car while he was attempting to exit the parking lot. He stated that he never put the car in reverse but that he "just sorta scooted her car on over some more" and just left the premises. He also alleged that some of the damages sustained by her vehicle occurred in a later accident and not in the September 1, 1984 incident. The Appel-

lant and Ms. Sells were the only witnesses to the September 1, 1984 incident. Julia Heirs, testified that the Appellant had told her on the telephone on August 24, 1984, "to tell ... that if I see her (Ms. Sells) on the road, I'm gonna hit her....". (Tr.23) Dara McBrian, an employee of Crowl Oil Company, testified that sometime after the incident she overheard Appellant say in a telephone conversation with Ms. Sells that he was going to "wipe her (Ms. Sells) out and annihilate her". (Tr. 94)

In his sole assignment of error, Appellant alleges that the trial court denied him the opportunity to present his defense by denying him a continuance in order to produce additional witnesses. During a hearing in the judge's chambers on the day of trial the following testimony was recorded:

> THE COURT: ...... do you want to tell me, for the record today; if you have any problems with going to trial in this case today?
>
> MR. WATERDOWN: No, not now.
>
> THE COURT: Okay, Judge Edmondson thought there was a problem—that you were complaining about not being able to get some witnesses subpoenaed, is that right?
>
> MR. WATERDOWN: Well, I was having a problem. was trying to get ahold of them, but I only got ahold of one and that's it.
>
> THE COURT: Are you ready to go to trial today?
>
> MR. WATERDOWN: Yes

At that point counsel for the Appellant made an oral motion for a continuance until the next regular docket on the grounds that two of their subpoenaed witnesses were not present. Counsel stated that he and the Appellant had been unable to get exact addresses on these witnesses. According to counsel these witnesses would testify to being in an accident involving Sonja Sells' car shortly after the incident of September 1, 1984, and their testimony would be essentially the same testimony as the testimony of James Lee Thompson, who was present to testify. (Tr. 4–7) However, counsel admitted that he had never talked to these prospective witnesses, and

consequently, did not know what their exact testimony would be. The record shows that this case was filed on September 1, 1984, set on the disposition docket both in January and September of 1985 and the trial began on October 4, 1985. Almost a year elapsed between the first disposition docket setting and the date of trial. However, the subpoenas for the witnesses were not issued until September 30, 1985. Moreover, the subpoenas failed to include any addresses or instructions as to how they might be served.

This Court has held on numerous occasions that in order for a motion for continuance to be proper it must be accompanied by an affidavit in compliance with 22 O.S. 1981, § 584 and 12 O.S.1981, § 668. *See* *Fiddler v. State,* 709 P.2d 205 (Okl.Cr. 1985); *Nichols v. State* 555 P.2d 70, 72 (Okl.Cr.1976). Section 668 provides that the party moving for a continuance must set forth in affidavit form facts showing the materiality of the evidence expected to be obtained. Material evidence is that quality of evidence which tends to influence the trier of fact because of its logical connection with the issue. BLACK'S LAW DICTIONARY, 881 (5th ed. 1979). In the instant case we note that no affidavit for continuance was filed in compliance with 12 O.S.1981, § 668; thus the request was rendered fatally defective. *Tate v. State,* 664 P.2d 1036 (Okl.Cr.1983). In *Tate* the Appellant also made an oral motion for continunce to interview a prospective witness to determine her testimony. This Court held that where no affidavit was prepared and presented, a motion for continuance is addressed to the sound discretion of the trial court and a ruling will not be reversed on appeal unless an abuse of discretion is apparent. *Id.* at 1038. We find that 12 O.S. 1981, § 668 is clear and precise in the requirements it mandates for a party to seek a continuance and we are required to apply it in this instance. *See* 22 O.S.1981, § 584. In spite of the clear dictates of Section 668 this Court in the past has stated we will still examine the entire record when considering the overruling of a motion for continuance to ascertain whether or not the defendant has suffered prejudice by the deni-

al. *See Duckett v. State,* 711 P.2d 944 (Okl.Cr.1985), *Lovelady v. State,* 478 P.2d 983 (Okl.Cr.1970), and *Andrews v. State,* 84 Okl.Cr. 104, 179 P.2d 491 (1947). We now determine that the provisions of Section 668 must be met before the trial court shall act on the motion or this court shall review the failure to grant a continuance as a proposition of error on appeal. To the extent our previous decisions in *Duckett, Tate, Lovelady,* and *Andrews* are in conflict with this decision, they are expressly overruled. This decision, however, does not restrict the discretion of the trial judge in allowing a party, when warranted due to new evidence, surprise or other valid reasons, sufficient time to prepare the affidavit and written motion required. Accordingly, this assignment of error is without merit.

The judgment and sentence is AFFIRMED.

PARKS, P.J., dissents.

LANE, V.P.J., and BRETT and JOHNSON, JJ., concur.

PARKS, Presiding Judge, dissenting:

Ventures into the civil procedure domain must be balanced with the dictates of due process. This balancing process was applied in the past by this Court in the cases the majority now overturns. In these cases, where a motion for continuance had been overruled, this Court examined the entire record to determine whether or not the defendant had suffered prejudice by the denial. The majority now construes 12 O.S.1981, § 668, in what appears to be a constitutionally suspect interpretation, simply because of the phrase "as in civil cases" found in 22 O.S.1981, § 584. It is true that this Court has found that the phrase does provide a nexus between criminal and civil procedure. *Snow v. State,* 453 P.2d 274 (Okl.Cr.1969). However, this tenuous tie between the civil and criminal arenas provides only procedural guidelines. This slender link does not, and cannot, slam the door to fundamental criminal procedure.

It is apparent that the phrase "as in civil cases" can only be interpreted for purposes of applying appropriate civil procedures that are not in conflict with fundamental criminal procedure. Persuasive evidence for this limitation is made apparent by the use of a similar phrase couched in 22 O.S. 1981, § 13. The "right to counsel" portion of Section 13 cannot reasonably, nor constitutionally, be construed to mean that a criminal defendant has no right to appointed counsel, or effective assistance of counsel, simply because the statute states "[t]o be allowed counsel, as in civil actions ...". 22 O.S.1981, § 13(2).

Moreover, by this ruling today a trial court would not possess the power to allow a continuance absent an affidavit, regardless of events that may unfold at trial. Unless, of course, the majority's analysis of the statute allows for the retention of trial court discretion exempt from review by this Court.

The majority, by this opinion today, rigidly adopts all of the provisions, that are "clear and precise", couched in 12 O.S.1981, § 667 and § 668. Surely, even those with a mod( ·t imagination can recognize the potentia. °or abuse cloaked in that portion of Section 668 that reads:

[If the adverse party will consent that the facts] alleged in the affidavit shall be read and treated as the deposition of the absent witness, ... no continuance shall be granted on the ground of the absence of such evidence. 12 O.S.1981, § 668

A draconian adherence to the above stated provision could understandably prejudice a defendant. *See, e.g., Madison v. State,* 6 Okl.Cr. 356, 118 P. 617 (1911). Certainly, the State could be the adverse party and reading the deposition of the defendant's only alibi witness could conspicuously limit the persuasive force of this witness as opposed to the actual appearance of the witness at trial. Nonetheless, the majority summarily discards this Court's authority to review such cases for determinations of prejudice. By this holding due process guarantees for a criminal defendant are banished to secondary importance behind, what the majority must per-

ceive as, the more influential dictates of civil procedure. I find this concept constitutionally infirm.