ALEXANDER v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:ALEXANDER v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ALEXANDER v. STATE
2019 OK CR 19
Case Number: F-2018-92
Decided: 09/05/2019
RESHAUN ANTONIO ALEXANDER, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2019 OK CR 19, __ __

 

 

O P I N I O N

ROWLAND, JUDGE:

¶1 Appellant Reshaun Antonio Alexander appeals his Judgment and Sentence from the District Court of Muskogee County, Case No. CF-2015-603, for Unlawful Possession of a Controlled Drug (Methamphetamine) with Intent to Distribute (Count 1), in violation of 63 O.S.Supp.2012, § 2-401(B)(2); Unlawful Possession of a Controlled Drug (Cocaine) with Intent to Distribute (Count 2), in violation of 63 O.S.Supp.2012, § 2-401(B)(2); Unlawful Possession of a Firearm by a Convicted Felon (Count 3), in violation of 21 O.S.Supp.2014, § 1283(A); Burglary in the First Degree (Count 4) in violation of 21 O.S.2011, § 1431; Burglary in the Second Degree (Count 5) in violation of 21 O.S.2011, § 1435; Knowingly Concealing Stolen Property (Count 6) in violation of 21 O.S.2011, § 1713; Eluding/Attempting to Elude Police Officer (Count 8) in violation of 21 O.S.2011, § 540A; Leaving the Scene of an Accident Involving Damage (Count 9) in violation of 47 O.S.2011, § 10-103; Intersection Violation-Stop or Yield (Count 10)(misdemeanor) in violation of 47 O.S.2011, § 11-403; and Possession of a Controlled Dangerous Substance (Oxycodone), Second and Subsequent (Count 11) in violation of 63 O.S.Supp.2012, § 2-402.[1] The jury found Alexander committed each of the felony counts after former conviction of two or more prior felonies. The Honorable Michael Norman, District Judge, presided over Alexander's jury trial and sentenced him, in accordance with the jury's verdict, to fifteen years imprisonment on each of Counts 1, 2, 6, and 11, twenty years imprisonment on Count 3, thirty-five years imprisonment on Count 4, ten years imprisonment on Count 5, five years imprisonment on Count 8, one year in the county jail on Count 9, and ten days in the county jail on Count 10.[2] Judge Norman ordered all counts to run concurrently with the exception of Count 4 which he ordered to run consecutively to sentences running concurrently.[3] Alexander raises the following issues on appeal:

(1) whether the district court erred by denying his motion for continuance;

(2) whether the district court compelled him to be tried in prison clothing;

(3) whether his waiver of the right to counsel was voluntary;

(4) whether his convictions and sentences for Count 3 -- Possession of a Firearm After Former Conviction of a Felony and Count 4 -- Knowingly Concealing Stolen Property violate the state prohibition against multiple punishments;

(5) whether his convictions for two counts of Unlawful Possession of a Controlled Drug With Intent to Distribute (Counts 1 and 2) violate the prohibitions against double punishment and double jeopardy;

(6) whether there was sufficient evidence to support his conviction for Knowingly Concealing Stolen Property;

(7) whether he was denied a fair trial from the admission of victim impact evidence during the guilt-innocence phase of trial; and

(8) whether he was denied a fair trial by the presentation of cumulative and prejudicial exhibits offered for sentence enhancement.

¶2 We find relief is not required and affirm the Judgment and Sentence of the district court on Counts 1, 3, 4, 5, 8, 9, 10, and 11. We do find, however, that relief is required on Counts 2 and 6 for the reasons discussed below.

Background

¶3 Officers Danny Dupont and Matt Burleson of the Muskogee Police Department were on patrol together on June 30, 2015. Around 11:00 a.m., they saw a brown, four-door Buick speeding down a residential street. They pursued the car and watched it fail to stop at posted stop signs. The officers endeavored to make a traffic stop, but the driver of the Buick led them on a high speed chase around the east side of Muskogee. The chase ended when the Buick sideswiped a parked car causing the parked car to collide with a house. Alexander, the driver, abandoned the Buick and ran away on foot. The two officers followed on foot after him, but both officers were no match for the speed of Alexander. Officer Dupont described Alexander as extremely tall, wearing blue jeans, a blue shirt and a ball cap. Alexander ran through several residential backyards and the officers ran parallel with him in an attempt to block his path. Officer Dupont realized the need for more manpower and radioed for assistance. Officer Dupont lost sight of Alexander behind an abandoned house; he then guarded the perimeter because other officers were pursuing Alexander by that time. A short time later, Officer Dupont saw Alexander running through a field carrying a knife. He watched as other officers gave Alexander verbal commands. When Alexander refused to comply, an officer close to Alexander deployed his taser and was able to take Alexander into custody. Officer Dupont returned to the abandoned Buick and called for a wrecker to impound it. He inventoried its contents and found a loaded, stolen semiautomatic pistol in the floorboard and baggies containing pills, a crystal-like substance and an off-white, rock-like substance in the ashtray. A criminalist with the Oklahoma State Bureau of Investigation tested the contents of the baggies and concluded the substances were oxycodone, methamphetamine and cocaine.

¶4 One of Alexander's burglary victims testified that she was on her way home from Tulsa when she received a call from a neighbor telling her there was a man running through their neighborhood being chased by police and that the man had gone through her house. She returned home and found her front door kicked in. Police showed her a photograph of the knife taken from Alexander upon his arrest and she identified it as one of hers from her kitchen.

¶5 Another neighbor testified she heard someone rattling her back door on June 30th shortly after her son left for the gym around 11:15 a.m. She raised the blind on the door and saw a black man trying to get inside. She ran for the front door to escape, but the man was able to burst through the back door and grab her. He said that he was not trying to hurt her and that he was just trying to get away from the police. He guided her to the bedroom, shoved her down, told her to stay there and went to another room. She pushed her Life Alert button and informed the operator there was an intruder in her house. He rushed back to the bedroom and yanked the Life Alert necklace from her neck. As the police got closer to her house, Alexander fled and was apprehended soon thereafter. Her son returned home, checked on his mother and surveyed the damage. He found in the living room a blue shirt, damp with sweat, that did not belong to anyone that lived there. He gave it to the police.

1. Motion for Continuance

¶6 Alexander claims the district court erred by denying his oral request for continuance for time to review discovery, conduct legal research and otherwise prepare for trial. He maintains that the district court's refusal to grant a continuance of any time after granting his Faretta motion forced him to trial unprepared to defend the charges against him.[4] Generally, we review a district court's ruling on a motion for continuance for an abuse of discretion and we will not disturb that ruling absent proof of error and prejudice. Lamar v. State, 2018 OK CR 8, ¶ 34, 419 P.3d 283, 293; Marshall v. State, 2010 OK CR 8, ¶ 44, 232 P.3d 467, 478. An abuse of discretion is any unreasonable or arbitrary ruling made without proper consideration of the facts and law pertaining to the issue. Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.

¶7 Prior to jury selection, the district court held a Faretta hearing to consider Alexander's request to represent himself. Alexander made the request the morning of trial because he believed appointed counsel had rendered ineffective assistance. He felt appointed counsel was unprepared for trial because counsel had not been in contact with him until the preceding day, had not issued any subpoenas for witnesses and had not provided him with any discovery materials in his case.[5] During the Faretta colloquy, the district court addressed trial continuances with Alexander and he acknowledged that his case was set for jury trial and that no continuances would be allowed. The district court accepted Alexander's waiver of counsel and granted his motion for self-representation. 

¶8 Alexander immediately asked for a minimum six-month continuance to prepare for trial. The district court denied Alexander's continuance request, noting the case had been ongoing for two-and-a-half years and one witness had already died. Alexander protested the adverse ruling, and the district court told him that it would get any subpoenas issued once Alexander provided the names and addresses of his anticipated witnesses. The prosecutor supplemented the record with reasons why the case remained unresolved, including delay occasioned by the performance of a competency evaluation finding Alexander competent, Alexander's bar complaint against his first appointed attorney, Alexander's request for time to hire private counsel without private counsel ever being retained, and the prosecution's filing of additional charges against Alexander for possessing contraband in jail. The prosecutor noted that Alexander had been present for preliminary hearing and insisted he had been well aware of the underlying facts of the charges against him for quite some time.

¶9 Alexander claims that his request for continuance was governed by 22 O.S.2011, § 584 and that he provided sufficient cause for postponement of his trial.[6] He argues that a defendant who elects to proceed to trial pro se after dismissing his attorney based on concerns of incompetence must be granted time to prepare for trial. See Coleman v. State, 1980 OK CR 75, ¶ 6, 617 P.2d 243, 245. He relies on the reasoning in United States v. King, 664 F.2d 1171 (10th Cir. 1981), to support his claim for relief. The court in King granted relief because of the denial of a continuance request made by an attorney who took over a complex income tax evasion case twenty-seven days before trial. The court in King stressed the importance of competent counsel, noting that deprivation of the Sixth Amendment guarantee of effective representation will "mandate reversal of a conviction even absent a showing that the resulting prejudice affected the outcome of the case." Id. at 1172-73.

¶10 The King court explained that inadequate preparation by counsel jeopardizes an accused's right to effective assistance of counsel and that inadequate preparation may result from unreasonable time constraints imposed by the trial court. Id. at 1173. The court identified five factors to consider in deciding whether the given preparation time was sufficient to permit the attorney to effectively assist his client. The court acknowledged the general deference afforded rulings on continuance requests, but refused to ignore constitutional implications associated with such rulings. Id. (stating, "[a]lthough rulings on motions for continuance are traditionally best left to the trial court's discretion, a judge is not imbued with the power to abrogate a criminal defendant's constitutional rights.").

¶11 Part of Alexander's request for continuance was predicated on the absence of evidence because appointed counsel had not issued subpoenas for witnesses that Alexander anticipated being called for the defense.[7] His failure to follow the procedures outlined in 12 O.S.2011, § 668 for continuances predicated on missing evidence forfeits this part of his claim for review. Waterdown v. State, 1990 OK CR 65, ¶ 5, 798 P.2d 635, 637.

¶12 His claim that the denial of his request prevented him from adequately reviewing the discovery and conducting research in a law library warrants no relief. Contrary to Alexander's claim, his case is not subject to the same constitutional analysis as that in King. He was the one who sought self-representation the morning of trial, his appointed attorney's readiness notwithstanding. Any lack of preparation was self-induced, i.e. the result of his own request. The district court was clear during the Faretta hearing that there would be no continuances, and Alexander persisted in waiving his right to counsel and exercising his right to self-representation. It was not unreasonable to condition the grant of Alexander's Faretta motion on his ability to immediately proceed to trial.

¶13 The bigger hurdle for Alexander, however, is his inability to show prejudice. The evidence against him was undeniably strong. He was identified by police officers as the man driving the Buick and running through the residential neighborhood to avoid apprehension by the police. He had a knife from one of the burglarized homes in his possession when apprehended. His shirt, damp with sweat, was found in the other burglarized home. Although he tried valiantly to challenge the officers' identifications, there was little he could offer and he does not, now on appeal, identify witnesses or evidence he could have presented to otherwise defend his case. Based on this record, we find the district court acted within its discretion in denying Alexander's motion for continuance and reject this claim.

2. Jail Clothing

¶14 Alexander claims his compelled attendance at trial wearing a prison shirt with the word "Corrections" stenciled on it denied him a fair trial. He argues the district court's decision not to delay the trial and allow him to change clothes amounted to an abuse of discretion. The State counters that Alexander neither lodged any objection to his clothing at trial nor asked for civilian clothing before trial. Alexander's failure to object, according to the State, makes review of this claim for plain error only.[8]

 

¶15 It is well settled that an accused cannot be compelled to appear before a jury in prison clothing if he or she made a timely request for civilian clothing. Ochoa v. State, 2006 OK CR 21, ¶ 20, 136 P.3d 661, 667. There is no Fourteenth Amendment violation, however, where the defendant makes "the decision to appear in jail dress and no request for civilian clothing appears in the record." Id.; Estelle v. Williams, 425 U.S. 501, 512--13, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976).

 

¶16 Alexander asks this Court to liberally construe his references to his prison shirt in opening statement and closing argument as objections and requests for civilian clothing. Near the end of his opening statement, Alexander stated:

I'm just asking all the jury just to take into consideration, you know, that I'm innocent until proven guilty and just because I got this "corrections" on the back of my shirt, I don't want nobody to misjudge me or anything like that.

In closing argument, Alexander again mentioned his clothing, stating:

I mean, I got a corrections shirt on. You not even supposed to go to trial. I asked for a white tee shirt, any shirt. They said no, you'll be okay. I come to court in a corrections shirt. They might as well as show the things that's on my leg, too. You know what I mean? Because it's against these things that are against the law, but this is how I'm being treated, you know.

¶17 Alexander's opening statement remark about his shirt was not an objection and cannot be construed as a request for civilian clothing. He simply asked the jury not to dismiss him out of hand because of his status as a convicted felon and to retain an open mind. Nor can his closing argument statement be construed as a timely objection and request for civilian clothing. Although he claimed during closing argument to have asked for another shirt and been denied, there is nothing in the record to substantiate that statement.

¶18 The record shows Alexander made the statements about his shirt deliberately in an effort to acknowledge his status and build credibility and/or sympathy with the jury. His intent may also have been to build in error. Regardless, he did not take any verifiable steps to timely obtain other clothing. See Estelle, 425 U.S. at 512-13, 96 S.Ct. at 1697 (finding no compulsion from defendant's appearance in jail attire where defendant failed to object and purposely referred to prison clothing at trial). Nor can the district court be faulted for not asking Alexander whether he was deliberately going to trial in jail clothes. As the Supreme Court stated in Estelle:

To impose this requirement [of asking the accused about being tried in prison clothing] suggests that the trial judge operates under the same burden here as he would in the situation in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), where the issue concerned whether the accused willingly stood trial without the benefit of counsel. Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.

Id. at 512, 96 S.Ct. at 1697.

¶19 Alexander waived his right to counsel and agreed to be held to the standards of an attorney. He took over all strategic and tactical decisions for trial. The decision to appear before the jury in jail dress was his own and there is no evidence he was compelled by anyone but himself to appear in the prison shirt. Based on this record, we find that Alexander has failed to establish a constitutional violation and that relief is not warranted under the plain error doctrine. This claim is denied.

3. Waiver of Counsel

¶20 Alexander claims that his waiver of counsel was coerced and invalid. He concedes, as he must, that the district court conducted a lengthy examination regarding the dangers and disadvantages of self-representation. He argues, however, that his waiver of counsel was not a voluntary one, but a choice of the lesser of two evils because appointed counsel was unprepared and had not discussed his case or defense with him. According to Alexander, he had the choice of accepting ineffective, incompetent counsel or the choice of representing himself. We review a district court's ruling granting a motion to waive counsel and to allow self-representation for an abuse of discretion. See Mathis v. State, 2012 OK CR 1, ¶ 18, 271 P.3d 67, 75.

¶21 "A waiver of the right to counsel is voluntary, knowing and intelligent when a defendant is informed of the dangers, disadvantages, and pitfalls of self-representation." Brown v. State, 2018 OK CR 3, ¶ 15, 422 P.3d 155, 162. The inquiry surrounding whether a defendant has intelligently elected to proceed pro se does not focus upon the wisdom of the decision or its effect upon the expeditious administration of justice. Id. at ¶ 16, 422 P.3d at 163. Rather, the inquiry focuses on whether the defendant was adequately informed and aware of the significance of what he was giving up by waiving the right to be represented by counsel. Id. The record must demonstrate that the defendant was made aware of the problems of self-representation and understood that his actions in proceeding without counsel may be to his ultimate detriment. Id. 

¶22 In Brown, the Court addressed a claim concerning a waiver of counsel and found no coercion. In that case, the district court specifically inquired whether or not the defendant was requesting to represent himself because counsel was constitutionally ineffective. Id. at ¶ 19, 422 P.3d at 163. In its analysis, the Brown Court cited with approval a federal case addressing a claim that a waiver of counsel was involuntary, namely United States v. Padilla, 819 F.2d 952, 955 (10th Cir. 1987). In Padilla, the court reasoned:

When a defendant is given a clear choice between waiver of counsel and another course of action, such as retaining present counsel, the choice is voluntary as long as it is not constitutionally offensive. A defendant forced to choose between incompetent or unprepared counsel and appearing pro se faces "a dilemma of constitutional magnitude." The question of voluntariness therefore turns on whether defendant's objections to present counsel are such that he has a right to new counsel. "To warrant a substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict."

Id. (Citations omitted).

¶23 The court in Padilla rejected the defendant's claim that his waiver of counsel was involuntary because his complaints about counsel did not constitute good cause for substitution of counsel. Id. at 956. The defendant's claim of ineffective assistance of counsel stemmed from his appointed and retained counsel's refusal to structure a defense as he directed. The court emphasized that the Sixth Amendment neither provides a right to counsel blindly following a defendant's instructions nor an absolute right to counsel of one's choice. Id. 

¶24 Alexander's claim that he was forced to choose between either unprepared, ineffective counsel or self-representation is likewise without merit because his complaints about appointed counsel did not establish good cause for substitution of counsel. The record showed that appointed counsel represented Alexander, without complaint, during three separate settings of his continued preliminary hearing, on the applications to revoke Alexander's probated sentences and on the initial hearing concerning three new cases filed against him. Although the district court told Alexander that appointed counsel was ready, willing and able to proceed to trial, Alexander disagreed and insisted counsel was unprepared citing counsel's lack of contact with him until the day before trial and counsel's alleged failure to go over discovery with him or subpoena any witnesses. The district court confirmed Alexander's desire to represent himself and painstakingly went through his rights and the dangers and disadvantages of self-representation. The record indicates that the district court regarded Alexander's request for self-representation as a further attempt to delay the proceeding. Although not stated by the district court explicitly, the record supports a finding that the district court viewed Alexander's objections to appointed counsel as groundless. There was no credible evidence of conflict or complete breakdown of communication. We therefore conclude that Alexander's decision to represent himself was voluntary and deny this claim.

4. Multiple Punishment Claims 

¶25 Alexander correctly claims he was punished twice for the same act when he was convicted and sentenced for Unlawful Possession of a Firearm by a Convicted Felon (Count 3) and for Knowingly Concealing Stolen Property (Count 6). His possession of the same gun served as the basis for the charges in Counts 3 and 6 and there was no temporal break between the alleged acts. Despite his failure to object below, the record shows that the acts were not separate and distinct. Sanders v. State, 2015 OK CR 11, ¶¶ 7-8, 11-12, 358 P.3d 280, 283-85. The State agrees and maintains that Count 6 should be reversed to avoid violation of the statutory prohibition against multiple punishments for the same act found at 21 O.S.2011, § 11. Because Alexander has established the commission of plain error, we find the appropriate remedy is to vacate Count 6 and remand the case to the district court with instruction to dismiss Count 6.

¶26 Alexander asserts another multiple punishment violation for his convictions on Counts 1 and 2 for Unlawful Possession of Drugs (methamphetamine and cocaine respectively) with Intent to Distribute. He maintains his control of the two drugs was a single act of possession because police found the baggies of drugs in one receptacle. The State concedes error under Watkins v. State, 1991 OK CR 119, 829 P.2d 42. Based on Watkins, we must vacate Count 2 and remand the case to the district court with instruction to dismiss Count 2.

5. Sufficiency of Evidence on Count 6

¶27 The resolution of Proposition 4 which requires the dismissal of Count 6 renders this claim moot.

6. Victim Impact Evidence

¶28 Alexander claims he was denied a fair trial from the admission of improper victim impact testimony during the guilt-innocence stage of his trial. He characterizes statements made by the victim/occupant of the home he burglarized concerning her health, faith, son and granddaughter as impermissible victim impact evidence. Alexander did not object to the challenged testimony; review is for plain error only.

¶29 The record shows that several of the challenged remarks, specifically the victim's testimony that she did not ask to be "roughhoused" and that the experience was traumatic for her, were relevant and not unfairly prejudicial. The victim's statements about her faith and health had little, if any, relevance. The admission of this testimony, however, did not affect the outcome of the trial in light of the district court's explicit instruction not to let sympathy affect the jury's verdict and the proper and compelling evidence of guilt admitted against Alexander.

¶30 Alexander invited any error in the victim's non-responsive answer on cross-examination about her son. Her clarification about which of her two sons found her assailant's damp blue shirt in her living room was a response to Alexander's questions implying that her deputy sheriff son was colluding with his employer to fabricate evidence against him. This Court will not grant relief for error invited by the defendant. Cuesta-Rodriguez v. State, 2010 OK CR 23, ¶ 73, 241 P.3d 214, 237. The victim's unresponsive statement on cross-examination about her granddaughter with Downs Syndrome also warrants no relief because, although irrelevant, we are convinced that the statement did not affect the verdict in this case. This claim is denied.

7. Sentence Enhancement Evidence

¶31 Alexander claims he was denied a fair sentencing proceeding because of the admission of two exhibits offered for sentence enhancement. State's Exhibit 35, admitted without objection, consists of a page from the Department of Corrections' website for an offender search of Alexander, with his photograph, physical description, aliases and information about his six prior convictions. State's Exhibit 36, also admitted without objection, is a bar graph created by the prosecution showing each of Alexander's prior convictions identified in State's Exhibits 29 through 34 on one axis and on the other axis is Alexander's age at the time of conviction on each of those offenses and the corresponding sentence. State's Exhibit 36 clearly shows that Alexander did not serve the full length of several of his prison terms. He maintains these exhibits were cumulative to the Judgment and Sentence documents offered to prove the existence of his prior convictions and that these exhibits were unfairly prejudicial and designed to encourage the imposition of greater sentences. 12 O.S.2011, § 2403. Review is for plain error only.

¶32 No error occurred from the admission of State's Exhibit 35 which repeated Alexander's convictions, contained his photograph and helped to prove he was the person in the Judgment and Sentence documents. The exhibit was relevant and not unfairly prejudicial. State's Exhibit 36 is another matter. The fact that it showed Alexander did not serve the full length of his previous sentences invited jury speculation upon parole practices, which is improper. Martin v. State, 1983 OK CR 168, ¶ 22, 674 P.2d 37, 41; McKee v. State, 1978 OK CR 27, ¶ 13, 576 P.2d 302, 305. While it is true that we held in Terrell v. State, 2018 OK CR 22, ¶ 6, 425 P.3d 399, 401 that "[j]urors are free to consider the relevant proof of a prior conviction including any evidence that a defendant previously received probation, suspension, or deferral of a sentence and any acceleration or revocation of such a sentence[,]" we did not disturb the longstanding prohibition on jurors considering or speculating about the possibility of parole. See Stewart v. State, 2016 OK CR 9, ¶ 14, 372 P.3d 508, 511 ("The longstanding rule is that the parties are not to encourage jurors to speculate about probation, pardon or parole policies."); McKee, 1978 OK CR 27, ¶ 14, 576 P.2d at 306 ("The possible eventuality of future parole, therefore, is an undesirable intrusion into the jury's deliberative processes."); Bell v. State, 1962 OK CR 160, ¶ 18, 381 P.2d 167, 173 ("The law does not make it any part of the jury's province to speculate on the defendant's conduct in the penitentiary, and the awards of grace he may receive because of good behavior.").

¶33 The introduction of State's Exhibit 36 was therefore plain error and we must decide if relief is required. It is not. The prosecutor did not unmistakably refer to parole in closing argument, despite arguing that Alexander's previous sentences of twenty and twenty-five years were insufficient to deter his criminal conduct. Even so, Alexander's jury recommended sentences of fifteen years or less on all but the count involving his elderly burglary victim. The district court ordered all but his sentence for first degree burglary to be served concurrently. In light of the compelling and unrefuted evidence of Alexander's guilt and his lengthy prior record, Alexander's jury fixed punishment well below what the prosecutor insinuated was required. The record reveals that the jury was neither swayed by the admission of State's Exhibit 36 nor by the prosecutor's argument. For these reasons, we find the error from admission of State's Exhibit 36 was harmless and deny this claim.

DECISION

¶34 The Judgment and Sentence of the district court on Counts 1, 3, 4, 5, 8, 9, 10 and 11 is AFFIRMED. The Judgment and Sentence of the district court on Counts 2 and 6 is VACATED and the case is REMANDED to the district court with instructions to DISMISS Counts 2 and 6. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2019), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT
OF MUSKOGEE COUNTY 

THE HONORABLE MICHAEL NORMAN, DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL
 
 
 APPEARANCES ON APPEAL
 
 
 
 
 RESHAUN ANTONIO ALEXANDER
 PRO SE

 DANIEL MEDLOCK
 ATTORNEY AT LAW
 620 WEST BROADWAY
 MUSKOGEE, OK 74401
 PRE-TRIAL COUNSEL
 FOR DEFENDANT
 
 
 ARIEL PARRY
 APPELLATE DEFENSE
 COUNSEL
 P.O. BOX 926
 NORMAN, OK 73070
 COUNSEL FOR APPELLANT
 
 
 
 
 TIMOTHY KING
 ASST. DISTRICT ATTORNEY
 220 STATE STREET
 MUSKOGEE, OK 74401
 COUNSEL FOR STATE
 
 
 MIKE HUNTER
 ATTORNEY GENERAL
 OF OKLAHOMA
 JAY SCHNIEDERJAN
 ASSISTANT ATTORNEY
 GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 

OPINION BY: ROWLAND, J.
LEWIS, P.J.: Concur in Results
KUEHN, V.P.J.: Concur
LUMPKIN, J.: Concur in Part and Dissent in Part
HUDSON, J.: Concur in Part and Dissent in Part

FOOTNOTES

[1] The State dismissed Count 7 before trial.

[2] Under 21 O.S.Supp.2015, § 13.1, Alexander must serve 85% of his sentence of imprisonment on Count 4 before he is eligible for parole consideration.

[3] The district court accepted the prosecution's recommendation concerning the concurrent and consecutive service of Alexander's sentences. The district court misspoke at formal sentencing, however, stating all counts with the exception of Count 4 would run consecutively. It is apparent the court meant to say that all counts but Count 4 would run concurrently with each other. The Judgment and Sentence reflects the intended ruling and neither party claims otherwise.

[4] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)(holding criminal defendant has Sixth Amendment right to self-representation and may proceed without counsel provided he or she voluntarily and intelligently waives his or her right to counsel).

[5] The lack of contact between appointed counsel and Alexander appeared to be the result of Alexander's incarceration within the Department of Corrections outside of Muskogee County on his revoked sentences. Appointed counsel had represented Alexander, without complaint, on all but one occasion during his continuing preliminary hearing, on his revocation cases and with respect to the additional charges filed after the instant charges. Alexander's preliminary hearing spanned a number of days over a 13-month period, specifically December 17, 2015, September 1, 2016, December 7, 2016, and January 11, 2017. The magistrate overruled Alexander's demurrer and bound him over for trial on March 16, 2017.

[6] Section 584 states:

When an indictment or information is called for trial, or at any time previous thereto, the court may, upon sufficient cause shown by either party, as in civil cases, direct the trial to be postponed to another day in the same or next term.

[7] Alexander claimed he left his list of witnesses in his prison cell because he did not know he was coming to Muskogee County for trial. Despite the district court's offer to insure the issuance of any necessary subpoenas, Alexander never provided the court with the names and location of any desired witnesses.

[8] Under plain error review, Alexander must show that an error, plain or obvious under current law, adversely affected his substantial rights. Hogan v. State, 2006 OK CR 19, ¶ 38, 139 P.3d 907, 923. Only if he does so will this Court entertain correcting the error provided the error seriously affected the fairness, integrity or public reputation of the judicial proceedings or represented a miscarriage of justice. Id.

LEWIS, PRESIDING JUDGE, CONCURRING IN RESULT:

¶1 I concur in the Court's findings that State's Exhibit 36 invited jury speculation on probation and parole and was erroneously admitted, but that no relief is required. The prosecutor here did not engage in the flagrant misuse of evidence about probation or parole in comments to the jury, and thus avoided the principal vice which concerned the Court in Hunter v. State, 2009 OK CR 17, ¶ 9, 208 P.3d 931, 933, and Stewart v. State, 2016 OK CR 9, ¶ 17, 372 P.3d 508, 512.

¶2 Those cases tried to maintain a sensible distinction between probation and parole evidence, which was sometimes incidental to unredacted proof of prior convictions; and the prejudicial misuse of such evidence by prosecutors in certain shopworn and reductionist arguments to the jury. In Terrell, the Court repudiated even those modest limitations in favor of the no-holds-barred approach to enhanced sentencing exemplified today in Judge Lumpkin's separate writing. Today's opinion is hard to logically reconcile with the extreme leanings of Terrell, but the Court gets it at least partially right. I would go further and overrule Terrell.

¶3 I also concur in the Court's conclusion that Appellant's trial in jail clothing was not plain, reversible error. The Supreme Court in Estelle v. Williams, 425 U.S. 501, 507-08, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), recognized the evil proscribed by the Due Process Clause as compelling a defendant to stand trial in jail clothing absent some weighty justification. The Supreme Court recognized that the accused in some cases might pose a security threat; or might prefer to stand trial in jail garb, perhaps for tactical reasons, or to produce a technical violation of a per se prohibition.

¶4 The record is unclear about the defendant's actual desire to stand trial in jail clothing. Any error is not plain or obvious, and provides no basis for relief. Estelle nevertheless reminds us that jail clothing is "so likely to be a continuing influence" as to pose "unacceptable risk" of introducing "impermissible factors" into the jury's deliberations. Id., 425 U.S. at 504, 505. I would encourage trial judges to resolve any ambiguity about the defendant's desire to appear in jail or civilian clothing on the trial record, especially where, as here, the defendant appears pro se, is unable to make bond, and may be totally dependent on jail personnel for access to civilian clothing at trial.

LUMPKIN, JUDGE: CONCUR IN PART/DISSENT IN PART:

¶1 In concur in the results reached in this case but write to address a couple of issues.

¶2 In Proposition I, the Court does an excellent job of analyzing the reasons for upholding the denial of the oral motion for a continuance. Appellant requested and was granted the right to represent himself thus making him responsible, as an attorney would be, to follow the rules and statutes regarding a motion for a continuance. While we have not held that a motion for a continuance is required to be in writing, even though the best practice is that it should, 22 O.S.2011, § 668 does require a written affidavit to support an application for a continuance. Appellant provided no written affidavit and under § 668 the motion should be denied. Nothing more need be said.

¶3 As to Proposition V, the State concedes that Watkins controls the question of two separate drugs in the same package. While I agree, I point out, as I did in Watkins, that in drafting 63 O.S. § 2-401, the Oklahoma Legislature failed to set out that possession of each separate drug constitutes a separate offense and is punishable individually. Due to the limitations in the wording of the statute, I continue to agree. The Legislature has had a substantial amount of time to correct the drafting and by its silence has elected not to do so.

¶4 I must dissent to the Court's finding that Exhibit 36 was admitted in error. The Court's concern about jury speculation is really a reflection of the Court's speculation not borne out by the record. Exhibit 36 is no more than an aid to the jury to visualize what the other exhibits regarding Appellant's criminal history reflect. Exhibit 36 merely repeats the evidence already admitted. The Court reads Terrell too narrowly in its speculation. In Terrell, we finally decided the jury has a right to be fully advised concerning a defendant's past criminal history. Just by looking at the dates on the various judgment and sentence documents, it is readily apparent Appellant did not serve the entirety of his many sentences. The State made no comments regarding parole and did not focus on the fact Appellant got out early. This exhibit fully complies with the breadth of evidence we have allowed in Terrell. While we maintain the prohibition on juror speculation on parole, that is not involved here; i.e., the sentences actually served are facts subject to proof not speculation. The proof of these facts in no way requires speculation regarding parole practices; it is merely a provable fact, like other admissible evidence. I find no error and thus no plain error in this proposition.

¶5 I concur in affirming the judgment and sentence in this case.

HUDSON, J., CONCURRING IN PART/DISSENTING IN PART:

¶1 I concur with the decision to deny relief and with much of the majority's analysis of Appellant's claims. However, I join Judge Lumpkin's dissent to the Court's finding that the admission of State's Exhibit 36 was error. We held in Terrell that:

Jurors are free to consider relevant proof of a prior conviction including any evidence that a defendant previously received probation, suspension, or deferral of a sentence and any acceleration or revocation of such a sentence.

Terrell v. State, 2018 OK CR 22, ¶ 6, 425 P.3d 399, 401 (internal citation omitted). State's Exhibit 36 merely repeated evidence of Appellant's prior convictions that had already been introduced into evidence. The judgment and sentence documents made clear that Appellant did not completely serve the entire sentences for his various convictions. This was proper proof under Terrell for the jury's consideration during Appellant's bifurcated sentencing proceeding.

¶2 Today's decision nonetheless holds that State's Exhibit 36 violates the prohibition on juror speculation concerning the possibility of parole. If there is a problem with the jury's consideration of parole in this case, however, it is a paradox of our own making. The majority's resolution of this issue ignores that the jury's sentencing deliberations here were already guided by several of the court's instructions addressing the parole process. Appellant was convicted of an 85% crime in Count 4--first degree burglary. 21 O.S.Supp.2014, § 13.1. Appellant's jury was thus instructed during sentencing on the 85% Rule for this count--a fact that undoubtedly focused the jury's attention to the possibility of parole in relation to his sentences for the other counts, particularly the maximum sentence of life imprisonment.[1] Indeed, Appellant's jury was instructed that Counts 1, 2, 3, 4, 5, 6, and 8 each were punishable by up to life imprisonment after two prior felony convictions and it was aware from the instruction on the 85% Rule that a life sentence for purposes of determining eligibility for parole would be calculated as the equivalent of 45 years.

¶3 Because the jury's consideration of parole practices was virtually guaranteed by the court's instructions, the judgment and sentence evidence presented here posed no additional danger whatsoever of eliciting unfair and prejudicial speculation by the jury concerning the parole process. The jury knew that Appellant would become eligible for parole for his various crimes and that the only crime for which he would be required to serve 85% of the sentence before becoming parole-eligible was his first degree burglary conviction. Moreover, the prosecutor did not address, in discussing the appropriate sentence, the parole process for the counts not governed by the 85% Rule. Nothing in our case law supports abolishing the jury's consideration of the possibility of parole for a defendant's crimes during a bifurcated sentencing proceeding under the circumstances presented here. See Terrell, 2018 OK CR 22, ¶ 7, 425 P.3d at 401 ("Since the jury is free to consider the relevant proof of a prior conviction, both parties are afforded wide latitude to discuss this evidence and make recommendation as to punishment in the second stage of a trial.").

¶4 I would go even further, however, and overrule our prior decisions establishing the so-called prohibition against juror speculation about parole. The existence of parole is a well-known phenomenon. Our decision today illustrates the difficulty of applying the so-called prohibition against considering or speculating about parole. Unlike in the past, jurors are increasingly being forced to consider the possibility of parole with instructions addressing 85% crimes in cases that also charge crimes not addressed by the 85% Rule. It is time for our jurisprudence to reflect reality and to inform juries of truthful information concerning the parole process.

¶5 I observe too that the prosecutor's comments in this case did not violate the prohibition against so-called "societal alarm" arguments. The prosecutor did not "suggest[ ] that the jury should punish [Appellant] for larger societal problems or that the jury should 'send a message' to the broader public about the case." Mathis v. State, 2012 OK CR 1, ¶ 27, 271 P.3d 67, 77. Instead, the prosecutor's arguments "were based upon the specific facts before the jury regarding [Appellant.]" Id. The prosecutor's sentencing argument appropriately focused on Appellant's body of work, not unrelated themes based on deterrence, societal outrage to crime and the corresponding need to "send a message." See Terrell, 2018 OK CR 22, ¶¶ 4, 9, 425 P.3d at 400-01, 402; Mathis, 2012 OK CR 1, ¶ 27, 271 P.3d at 77.

¶6 For the reasons discussed above, I concur in part and dissent in part to today's decision.

FOOTNOTES

[1] Instruction No. 59 told the jury:

A person convicted of Burglary in the First Degree, shall be required to serve not less than eighty-five percent (85%) of the sentence imposed before becoming eligible for consideration for parole and shall not be eligible for any credits that will reduce the length of imprisonment to less than eighty-five [sic] (85%) of the sentence imposed.

If a person is sentenced to life imprisonment the calculation of eligibility for parole is based upon a term of forty-five (45) years, so that a person would be eligible for parole after thirty-eight (38) years and three (3) months.

(O.R. 151).

This instruction was required under Anderson v. State, 2006 OK CR 6, ¶ 24, 130 P.3d 273, 282-83. We have held that this instruction "is tailored to fit the specific statutory provisions, and gives factual information without encouraging speculation" about parole. Florez v. State, 2010 OK CR 21, ¶ 4, 239 P.3d 156, 157 (internal citation omitted).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1990 OK CR 65, 798 P.2d 635, WATERDOWN v. STATE
Discussed
 1991 OK CR 119, 829 P.2d 42, WATKINS v. STATE
Discussed
 1978 OK CR 27, 576 P.2d 302, McKEE v. STATE
Discussed at Length
 2006 OK CR 6, 130 P.3d 273, ANDERSON v. STATE
Discussed
 2006 OK CR 19, 139 P.3d 907, HOGAN v. STATE
Discussed
 2006 OK CR 21, 136 P.3d 661, OCHOA v. STATE
Discussed
 2009 OK CR 17, 208 P.3d 931, HUNTER v. STATE
Discussed
 2010 OK CR 8, 232 P.3d 467, MARSHALL v. STATE
Discussed
 2010 OK CR 21, 239 P.3d 156, FLOREZ v. STATE
Discussed
 2010 OK CR 23, 241 P.3d 214, CUESTA-RODRIGUEZ v. STATE
Discussed
 2012 OK CR 1, 271 P.3d 67, MATHIS v. STATE
Discussed at Length
 2012 OK CR 7, 274 P.3d 161, NELOMS v. STATE
Discussed
 2015 OK CR 11, 358 P.3d 280, SANDERS v. STATE
Discussed
 2016 OK CR 9, 372 P.3d 508, STEWART v. STATE
Discussed at Length
 2018 OK CR 3, 422 P.3d 155, BROWN v. STATE
Discussed
 2018 OK CR 8, 419 P.3d 283, LAMAR v. STATE
Discussed
 2018 OK CR 22, 425 P.3d 399, TERRELL v. STATE
Discussed at Length
 1980 OK CR 75, 617 P.2d 243, COLEMAN v. STATE
Discussed
 1962 OK CR 160, 381 P.2d 167, BELL v. STATE
Discussed
 1983 OK CR 168, 674 P.2d 37, MARTIN v. STATE
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 668, Procedure for Motion for Continuance
Cited
 12 O.S. 2403, Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion or Cumulative Nature of Evidence
Cited
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 13.1, Required Service of Minimum Percentage of Sentence - Offenses Specified
Discussed
 21 O.S. 11, Specific Statutes in Other Chapters as Governing - Acts Punishable in Different Ways
Cited
 21 O.S. 540A, Eluding Peace Officer
Cited
 21 O.S. 1283, Convicted Felons and Delinquents
Cited
 21 O.S. 1431, Burglary in First Degree
Cited
 21 O.S. 1435, Burglary in Second Degree - Acts Constituting
Cited
 21 O.S. 1713, 21 O.S. 1713, Receiving Stolen Property - Reasonable Inquiry Required
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 584, Postponement of Trial for Sufficient Cause
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 11-403, Vehicle Entering Stop or Yield Intersection
Cited
 47 O.S. 10-103, Accidents Involving Damage to Vehicle
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-401, Prohibited Acts A - Penalties
Discussed at Length
 63 O.S. 2-402, Prohibited Acts B - Penalties
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA